# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JEANNIE L. NOBLE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-464-SPS |
| | ) |
| COMMISSIONER of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Jeannie L. Noble requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of the evidence must take into account whatever in the record fairly detracts from its

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was fifty-two years old at the time of the administrative hearing (Tr. 28, 178). She completed twelfth grade, and has worked as a tag and title clerk, a carpet layer helper, and a production assembler (Tr. 19, 239). The claimant alleges inability to work since her application date of September 1, 2015, due to rheumatoid arthritis, osteoporosis, back problems, anxiety, depression, neck problems, memory problems, a learning disability, and post-traumatic stress disorder ("PTSD") (Tr. 238).

## Procedural History

On September 1, 2015, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. The application was denied. ALJ Doug Gabbard, II, conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated December 22, 2016 (Tr. 11-21). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b), except that she could not climb ladders/ropes/scaffolds; she could only frequently stoop, kneel, and crouch; and she was unlimited in the ability to balance and crawl. He further found that she was limited to

unskilled work which was simple, repetitive, and routine; supervision must be simple, direct, and concrete; interpersonal contact with supervisors and co-workers must be on a superficial work basis; she should only have occasional workplace changes; she must have normal regular work breaks; and she should have no contact with the general public (Tr. 15). The ALJ thus concluded that the claimant could return to her past relevant work as a production assembler (Tr. 19). Additionally, he found that she could perform the jobs of housekeeping cleaner and bakery assistant worker (Tr. 20).

**Review**

The claimant contends that the ALJ erred by: (i) improperly rejecting a treating physician opinion and two consultative examiners' opinions, and (ii) failing to properly account for her rheumatoid arthritis in formulating her RFC. Because the ALJ does appear to have ignored probative evidence regarding the claimant's impairments, the decision of the Commissioner should be reversed.

The ALJ determined that the claimant had the severe impairments of degenerative disc disease of the cervical and lumbar spine, history of rheumatoid arthritis/osteoarthritis, affective disorder, bipolar disorder, PTSD, and anxiety disorder (Tr. 13). The medical evidence relevant to the claimant's mental health treatment demonstrates that the claimant sought treatment for her mental health at Carl Albert Community Mental Health Center in August 2014, reporting depression, anxiety, and loss of concentration (Tr. 398). However, in December 2014, a treatment note from Little Axe Health Center in Norman, Oklahoma indicates that the claimant reported being hooked on painkillers but refused psych treatment or drug abuse counseling, and the provider was suspicious that it was a drug-

-4-

seeking encounter (Tr. 441). The claimant also received treatment from Dr. Peter Alan Rao in Tulsa, Oklahoma, and he prescribed her pain medications beginning August 20, 2015 (Tr. 527-548, 561-572). Dr. Rao's monthly treatment notes indicate that there was no evidence of doctor shopping or irregularities (Tr. 531). A July 2016 treatment note indicates that the claimant had obtained a job as a floating substitute teacher in public school (Tr. 566). She did not appear to have that job in October 2016 (Tr. 569).

On March 24, 2016 and April 7, 2016, Dr. Rao completed a series of forms related to the claimant's mental status and her ability to work. He stated that the claimant's chronic pain interfered with her activities of daily living, and that loud noises and excessive stress exacerbated her pain (Tr. 550). He indicated that the claimant would miss three or more days of work per month, and that the claimant's inability to deal with stress and ability to be easily overwhelmed were contributing factors (Tr. 551, 557). He also checked boxes indicating, *inter alia*, that the claimant could not make simple work-related decisions in a routine work setting, nor could she maintain concentration and attention for extended periods or handle normal work stress (Tr. 552). Furthermore, he represented that the claimant's impairments would be present even in the absence of drug/alcohol abuse (Tr. 552). On a form related to mental abilities and aptitudes needed to do unskilled work, Dr. Rao indicated that the claimant was "unable to meet competitive standards" in fourteen of sixteen areas, including deal with normal work stress (Tr. 555). He also indicated she was "unable to meet competitive standards" for all areas of semiskilled work, again noting that stress was worsened by chronic pain (Tr. 556). He indicated that the claimant's substance abuse contributed to the claimant's limitations, but that she was currently in

remission (Tr. 557). An April 7, 2016 toxicology screen was positive for marijuana as well as buprenorphine (an ingredient in her prescribed pain medication) (Tr. 558).

On December 9, 2014, Jennifer Potter, Psy.D., conducted a psychological evaluation of the claimant (Tr. 429-432). Dr. Potter assessed the claimant with persistent depressive disorder, generalized anxiety disorder, major depressive disorder (recurrent, severe without psychotic features), and panic disorder (Tr. 432). Dr. Potter noted that the claimant appeared to be experiencing a superimposed major depressive episode, but that her anxiety was extreme and appeared to be more debilitating than the depression, and that the combination of depression and anxiety impacted her to a significant degree (Tr. 432). As to managing her funds, Dr. Potter found the claimant would benefit from assistance with managing funds, "based on the severity of her symptoms as well as her profound problems with focus and concentration" (Tr. 432).

On January 21, 2016, Kathleen Ward, Ph.D., conducted a mental status examination of the claimant (Tr. 512). Dr. Ward indicated that the claimant's Montreal Cognitive Assessment score indicated a consistent impairment in the language domain, as well as poor concentration (Tr. 514). She assessed the claimant with bipolar I disorder, PTSD, amphetamine use disorder of unknown remission status, cannabis use disorder (provisional), and opioid use disorder by history (Tr. 514).

State reviewing physicians indicated that the claimant could perform light work with some postural limitations, but no manipulative, visual, communicative, or environmental limitations (Tr. 74-75, 93-94). State reviewing physicians also completed Mental RFC assessments and concluded that the claimant could perform simple tasks with routine

supervision, relate to peers and supervisors on a superficial work basis, and adapt to a work environment, but that she could not relate to the general public (Tr. 76-78, 96-97).

When asked about the full-time job at the public school, the claimant testified at the administrative hearing that she was fired for not showing up, and that she only worked there for a couple of weeks (Tr. 47). She testified that she did not go because it was five days in a row, six hours a day (Tr. 47). This position was not considered as part of the claimant's past relevant work (Tr. 19, 57).

The claimant asserts that the ALJ erred in formulating her RFC, and the undersigned Magistrate Judge agrees. The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to

reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted].

Likewise, the opinions of physicians such as consultative examiners must be evaluated for the proper weight. "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider [the *Watkins*] factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

In his written opinion, the ALJ summarized the claimant's hearing testimony as well as the medical evidence in the record. As to Dr. Potter's opinion, the ALJ assigned it little weight because she only saw the claimant once, and "did not appear to consider the claimant's lack of treatment in rendering her decision" (Tr. 18). He then assigned little weight to Dr. Rao's opinion, asserting that it is "wholly inconsistent" with the medical evidence as a whole, that she was consistently alert and oriented, that she reported her pain was under fair control, and that she had obtained a full-time job as a teacher (Tr. 18). He also assigned little weight to Dr. Ward's opinion as to the claimant's severe concentration problems, finding it inconsistent with the claimant's 2016 one-time report that he had obtained a job as a teacher (Tr. 19). He then acknowledged the claimant's concentration

and anxiety symptoms but discounted them because she had refused mental health treatment, and the physical consultative examiner noted she had normal concentration (Tr. 19). He thus determined that the evidence did not warrant any further limitations than those listed above (Tr. 19). He then assigned the "greatest weight" to the opinions of the state reviewing physicians (Tr. 19).

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by her treating physicians, and the ALJ erred in failing to conduct the requisite analysis with regard to the opinions of Dr. Rao, Dr. Potter, and Dr. Ward contained in the record. Although the ALJ noted the proper analysis at the outset of step four, he failed to properly apply it when he ignored the evidence in the record and proceeded to reject every opinion of her examining and consultative physicians. Instead, he imposed an RFC that would avoid a finding of disabled, while improperly rejecting the evidence as to her mental limitations, specifically evidence related to the claimant's limitations in concentration and ability to handle stress. This is particularly troubling where, as here, the ALJ failed to account for the consistent assessments that the claimant had concentration problems and stress was a major factor in her (in)ability to function, instead choosing to discount it all because the claimant obtained a full-time job (that she was fired from within two weeks). *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984).

The ALJ further discounted the evidence in the record because the claimant refused mental health treatment, which compounded the errors listed above. He failed to consider whether the claimant had an acceptable reason for failing to follow through on mental health treatment, which could include her severe impairments of affective disorder, bipolar disorder, PTSD, and anxiety disorder. In considering the impact of failure to follow treatment, the ALJ must follow a four-part test: (i) whether treatment would have restored the claimant's ability to work, (ii) whether treatment was prescribed, (iii) whether treatment was refused, and (iv) whether the excuse was justified. *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987), *citing Weakley v. Heckler*, 795 F.2d 64, 66 (10th Cir. 1986), *quoting Teter v. Hecker*, 775 F.2d 1104, 1107 (10th Cir. 1985). The ALJ focused only on one factor to the exclusion of others, which is error.

Because the ALJ failed to properly evaluate the evidence available in the record, the decision of the Commissioner must be reversed and the case remanded to the ALJ for a proper analysis in accordance with the appropriate standards. If such analysis results in adjustment to the claimant's RFC, the ALJ should re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 6th day of March, 2019.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**